UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
AHMED ZUBAIR,                      :
                                   :    09 Civ. 7927(VM)
                    Plaintiff,     :
                                   :    **DECISION AND ORDER**
      - against -                  :
                                   :
ENTECH ENGINEERING P.C. and        :
SOUDABEY BAYAT,                    :
                                   :
                    Defendants.    :
----------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8|17|11

**VICTOR MARRERO, United States District Judge.**

     Plaintiff Ahmed Zubair ("Zubair") brought this action against defendants EnTech Engineering P.C. ("EnTech") and Soudabey Bayat ("Bayat") (together, "Defendants") for violation of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA") and New York State Labor Law ("NYSLL") for failing to pay him for certain overtime hours worked while employed with EnTech as a chief inspector.  Zubair also asserts a breach of contract claim based on Defendants' failure to pay him (1) accrued vacation time for the period he was employed by Defendants; (2) an agreed upon wage rate for the Nassau Expressway Project (defined below) for the period November 2008 through December 2008; and (3) lodging and travel expenses for the period May 2008 through December 2008.

     Both parties now move for summary judgment on all claims pursuant to Rule 56 of the Federal Rules of Civil

Procedure ("Rule 56").  For the reasons discussed below, Zubair's motion for summary judgment is GRANTED in part and DENIED in part, and Defendants' motion for summary judgment is GRANTED in part and DENIED in part.

## I.   BACKGROUND[1]

Beginning in 2006, Zubair worked for EnTech as an inspector in different capacities on three New York State Department Transportation ("NYSDOT") projects: (1) the Robert Moses Causeway Project ("Robert Moses Project"); (2) the Bridge Deck Joint/Replacement Project ("Bridge/Deck Project"); and (3) the Nassau Expressway and Interim Nassau Expressway Rehabilitation and Resurfacing Project ("Nassau Project").  From 2006 to 2007, Zubair worked on the Robert Moses Project as a senior inspector with painting certification.  Although the parties disagree as to whether Zubair was a salaried employee, it is undisputed that Zubair's rate of pay was $43 per hour for the Robert Moses Project.  He also received overtime pay when he worked more than 40 hours in a week.  From May 2008 through September 2008, Zubair worked on the Bridge/Deck Project as a senior

---

[1] The factual summary below is derived from the following documents and any exhibits and declarations attached thereto:  Defendants letter-briefs dated March 21, 2011 ("Defendants March 21 Letter") and April 14, 2011, and Zubair's letter-briefs dated March 21, 2011 and April 14, 2011 ("Zubair April 14 Letter").  Except where specifically referenced, no further citation to these sources will be made.

inspector.  On this project, Zubair was paid $49 per hour and did not receive overtime pay when he worked more than 40 hours in a week.  Finally, from September 2008 through December 2008, Zubair worked on the Nassau Project as a chief/senior inspector.  His rate of pay for this project was $49 per hour, which was later reduced to a rate of $46 per hour, and he received no overtime compensation.

Zubair contends that his primary duties remained the same throughout his employment at EnTech.  Among other things, Zubair was responsible for evaluating and inspecting the work performed by contractors to determine whether it was satisfactory and in accordance with contract specifications.  Zubair also coordinated the work of other inspectors and reviewed their reports to ensure that they accurately reported the work conducted by the contractors. He maintains that he did not supervise the other inspectors nor did he assign them work.  At times, Zubair suggested improvements to a project, but he asserts that he had no authority to implement those recommendations.  Rather, it was the ultimate decision of the resident engineer to implement such changes.  He also did not have the authority to hire or fire project workers.

Zubair holds a bachelor's degree in civil engineering from Drexel University. He also obtained credits from Drexel's environmental engineering masters program, but never completed the program. Over the years, Zubair has participated in a number of training sessions and certifications, including classes from the National Association of Corrosion Engineers and the American Society of Quality Engineers and has many years of experience as an inspector.

## II.  DISCUSSION

### A.  SUMMARY JUDGMENT STANDARD

In connection with a Rule 56 motion, "[s]ummary judgment is proper if, viewing all the facts of the record in a light most favorable to the non-moving party, no genuine issue of material fact remains for adjudication." Samuels v. Mockry, 77 F.3d 34, 35 (2d Cir. 1996) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-50 (1986)). The role of a court in ruling on such a motion "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986). The moving party bears the burden of proving that no genuine issue of material fact

4

exists, or that due to the paucity of evidence presented by the non-movant, no rational jury could find in favor of the non-movant. <u>See</u> <u>Gallo v. Prudential Residential Servs., L.P.</u>, 22 F.3d 1219, 1223 (2d Cir. 1994).

B.   FLSA OVERTIME CLAIM

Under the FLSA, employers are obligated to pay their employees one and one-half times their regular hourly wages for a workweek longer than forty hours provided that that the employee is not exempt from the FLSA's coverage. <u>See</u> 29 U.S.C. § 207(a)(1). Congress has delegated to the Secretary of Labor the authority to define by regulation what constitutes an exempt employee under the FLSA. <u>See</u> <u>id.</u> Because the FLSA is a remedial statute, the Court must narrowly construe its exemptions, and "the burden rests on the employer to prove that a particular employee is exempt from the Act's requirements." <u>Havey v. Homebound Mortg., Inc.</u>, 547 F.3d 158, 163 (2d Cir. 2008). Here, Defendants contend that Zubair, as an engineer, is an employee who falls under either the "learned professional exemption" pursuant to 29 C.F.R. § 541.300 or the "highly compensated employee exemption" pursuant to 29 C.F.R. § 541.601. Accordingly, Defendants assert that they were not required to pay Zubair for his overtime hours worked on the Bridge/Deck and Nassau Projects.

1.   Professional Exemption

An employee is considered exempt from the FLSA overtime requirements if he or she is "employed in a bona fide executive, administrative, or professional capacity."[2] Id. § 213(a)(1) (emphasis added). The phrase "employed in a bona fide professional capacity" is defined, in pertinent part, as any employee "[c]ompensated on a salary or fee basis at a rate of not less than $455 per week" and whose primary duty requires either the performance of work demanding (1) "knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction" (the "Learned Professional"); or (2) "invention, imagination, originality or talent in a recognized field of artistic or creative endeavor." 29 C.F.R. § 541.300(a). The only question at issue here is whether Zubair qualifies under the Learned Professional exemption. In order for Zubair to be considered exempt as a Learned Professional, Defendants must establish that Zubair's employment met both a salary test and a duties test. See 29 C.F.R. § 541.2 ("The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary

_____

[2] Defendants neither present evidence nor assert that Zubair qualifies as an executive or administrative employee under the FLSA exemptions. The Court's discussion below, therefore, focuses only on the exemptions as they pertain to "professional employees."

and duties meet the requirements of the regulations in this
part.").

    a.   <u>Salary Test</u>

Under the salary test of the Learned Professional
exemption, the employee must meet two requirements to
qualify as exempt: (1) the employee must receive no less
than $455 per week and (2) the employee must be paid on
either a fee or salary basis. <u>See</u> 29 C.F.R. § 541.300.
The parties agree that Zubair was not paid on a fee basis;
however, there is disagreement as to whether he was
compensated on a salary basis as opposed to an hourly rate.
An employee is compensated on a "salary basis"

> if the employee regularly receives each pay period on
> a weekly, or less frequent basis, a predetermined
> amount constituting all or part of the employee's
> compensation, which amount is not subject to reduction
> because of variations in the quality or quantity of
> the work performed. Subject to [certain exceptions],
> an exempt employee must receive the full salary for
> any week in which the employee performs any work
> without regard to the number of days or hours worked.

<u>Id.</u> § 541.602. "An employee paid strictly on an hourly
basis would not fall within the definition of a salaried
employee." <u>Wright v. Aargo Sec. Servs., Inc.</u>, No. 99 Civ.
9115, 2001 WL 91705, at *5 (S.D.N.Y. Feb. 2, 2001)
(internal quotation marks omitted).

Zubair argues that he was paid on an hourly basis, not
a fixed salary, and thus Defendants cannot avail themselves

of the exemption.   In support, Zubair relies on EnTech's
offer letter ("Offer Letter") to Zubair, dated May 1, 2006,
indicating a proposed compensation package of "Base Salary:
$43 - $45/Hr = $89,440 - $93,600/Year[.]"  (Zubair April 14
Letter, Ex. 8.)   Not surprisingly, Defendants rely on the
same correspondence as evidence that Zubair was entitled to
a minimum base salary between $89,440 and $93,600 per year.
In response, Zubair argues that Defendants likely inserted
the yearly salary range to provide him with an idea of what
his yearly earnings would amount to and that if he was
compensated on a salary basis EnTech would not have listed
his  hourly  rate.    This  contention  is  buttressed  by
deposition testimony in which Zubair stated that he did not
get paid if he did not work.   By contrast, a salaried
employee "must receive the full salary for any week in
which the employee performs any work without regard to the
number of days or hours worked."   29 C.F.R. § 541.602(a).
A  review  of  Zubair's  paystubs  for  the  period  he  was
employed by EnTech confirms that Zubair was not paid a
predetermined amount.   Yet the Court cannot overlook that
several of Zubair's paystubs list amounts paid to Zubair
under the category of "salary."   Zubair contends that these
amounts reflect payment of previously unpaid wages and
should be disregarded by the Court because such amounts are

disproportionately lower than Zubair's hourly wages.  See Wright, 2001 WL 91705, at *5 (recognizing that "employers can encounter statutory difficulty when the employee's predetermined base pay is so far below his total compensation as to make the base pay's status as a salary merely an illusion").  Such a determination, however, is factual in nature and not appropriate at this stage of the proceeding.  Based on the conflicting evidence regarding Zubair's form of compensation, EnTech is not entitled to judgment as a matter of law.  However, the inquiry does not end here as to whether Zubair is entitled to judgment as a matter of law.  The Court must next determine whether Zubair's responsibilities as a chief inspector satisfied the duties test under the Learned Professional exemption.

2.  Duties Test

Under the Learned Professional exemption, an employee's primary duty must consist of the following three elements:

(1)  The employee must perform work requiring advanced knowledge;

(2)  The advanced knowledge must be in a field of science or learning; and

(3)  The advanced knowledge must be customarily acquired by a prolonged course of specialized intellectual instruction.

9

29 C.F.R. § 541.301(a).  The phrase "work requiring advanced knowledge" means

> work which is predominantly intellectual in character, and which includes work requiring the consistent exercise of discretion and judgment, as distinguished from performance of routine mental, manual, mechanical or physical work. An employee who performs work requiring advanced knowledge generally uses the advanced knowledge to analyze, interpret or make deductions from varying facts or circumstances.

Id. § 541.301(b).  Nonetheless, "[i]f a job does not require knowledge customarily acquired by an advanced educational degree . . . then, regardless of the duties performed, the employee is not an exempt professional under the FLSA."  Young v. Cooper Cameron Corp., 586 F.3d 201, 206 (2d Cir. 2009) (emphasis in original).

The facts in Young are instructive.  There, the plaintiff had over twenty years of engineering-type experience and his work "involved complicated technical expertise and responsibility" as well as considerable responsibility and discretion.  Id. at 203.  The United States Court of Appeals for the Second Circuit, however, found that the plaintiff was not exempt as a Learned Professional regardless of the amount of discretion and judgment he exercised because his position did not require advanced education training or instruction.  See id. at 206.

Here, as in Young, Zubair is not exempt regardless of his duties because the position of an EnTech inspector does not require a college or an advanced degree. Rather, to qualify for a NYSDOT project, a candidate must possess at least one of the following three qualifications: (1) at least a level III certification from the National Institute for Certification of Engineering Technologies ("NICET Certification"); (2) previous performance of similar duties as a former NYSDOT employee; or (3) a "combination of education and appropriate experience commensurate with the scope of the position in question." (See Zubair April 14 Letter, Ex. 7 at 19.) For the most part, EnTech and NYSDOT required candidates for the position of chief inspector to have NICET Certification.

The requirements for NICET Certification are based on experience, not formal education. In addition to passing the relevant examination, a candidate must possess at least ten years of work experience, evaluations from previous supervisors, and a recommendation. (See Requirements for Certification in Highway Construction, http://www.nicet.org/candidates/programs/highwayconstructio n_req.cfm (last visited Aug. 17, 2011).) Although "a two-year or four-year degree in a relevant ABET/TAC-accredited

11

engineering technology program will be accepted as equivalent to 18 months of work experience," a degree in engineering technology is not required to receive the NICET Certification. (Id.) Furthermore, credit will not be awarded for an engineering degree, as opposed to an engineering technology degree. (See id. (emphasis added).) In short, NICET Certification does not require an advanced degree, or even a college degree.

Defendants rely on Dingwall v. Friedman Fisher Assocs., P.C., 3 F. Supp. 2d 215, 218 (N.D.N.Y. 1998) for the proposition that Zubair's position required advanced knowledge. In that case, the Court held, in a single sentence and without further elaboration, that a designer of electrical systems "was clearly an area requiring advanced knowledge in a field of science . . . acquired by a prolonged course of specialized intellectual instruction and study." See id. at 218. Dingwall is neither controlling nor persuasive. The court's analysis focused on the amount of discretion and independent judgment plaintiff exhibited as an electrical systems designer rather than inquiring as to whether plaintiff's occupation required advanced knowledge in a field of science. As discussed above, Zubair's duties are irrelevant because the position of inspector did not require advanced knowledge.

12

Based upon a review of the record, the Court concludes that, irrespective of Zubair's degree in engineering, no reasonable juror could find that the knowledge required to perform Zubair's work met the Learned Professional exemption test. See Young, 586 F.3d at 206 ("[W]here most or all employees in a particular job lack advanced education and instruction, the exemption is inapplicable."). It is therefore unnecessary to determine whether his duties met the "discretion" requirement of the professional exemption analysis. Since Zubair's employment did not satisfy the duties test, the Court rejects Defendants' contention that Zubair is exempt from the overtime requirements of the FLSA as a Learned Professional employee.

2.   Highly Compensated Employee Exemption

In addition to professionals, the FLSA also exempts "highly compensated employees," defined as employees who have a "total annual compensation of at least $100,000" and who "customarily and regularly performs any one or more of the exempt duties or responsibilities of an executive, administrative or professional employee identified in subparts B, C or D of this part." 29 C.F.R. § 541.601(a). Similar to the Learned Professional exemption, to qualify as exempt as a highly compensated employee, Zubair must

13

satisfy <u>both</u> a salary and a duties test.  <u>See</u> <u>Anani v. CVS</u>
<u>RX Servs., Inc.</u>, No. 09 Civ. 5545, 2011 WL 2149099, at *4-5
(E.D.N.Y. May 23, 2011).

    a.  <u>Salary Test</u>

    Although the regulation requires that a highly
compensated employee's total compensation exceed $100,000,
to be exempt, the annual compensation "must include at
least $455 per week paid on a <u>salary</u> or <u>fee basis</u>." 29
C.F.R. 541.601(b) (emphasis added).  As previously
discussed, the Court concludes that a genuine issue of
material fact exists as to whether Zubair was compensated
on a salary basis.

    b.  <u>Duties Test</u>

    Subsection (d) of the regulations provides that the
highly compensated employee exemption applies

> only to employees whose primary duty includes
> performing office or non-manual work. Thus, for
> example, non-management production-line workers and
> non-management employees in maintenance, construction
> and similar occupations such as carpenters,
> electricians, mechanics, plumbers, iron workers,
> craftsmen, operating engineers, longshoremen,
> construction workers, laborers and other employees who
> perform work involving repetitive operations with
> their hands, physical skill and energy are not exempt
> under this section no matter how highly paid they
> might be.

29 C.F.R. § 541.601(d).  Defendants' conclusory statement
that Zubair qualifies as a "professional" under the highly

compensated employee exemption, without reference to any support in the record, fails to satisfy their burden of establishing that Zubair is excluded from the FLSA requirements. See Havey, 547 F.3d at 163. (See also Defendants March 21 Letter at 2 n.2.) On the contrary, Zubair testified that his job as chief inspector involved visiting various project sites where, among other things, he coordinated the work of other inspectors and confirmed that the contractors' work was in accordance with contract specifications. Zubair's job responsibilities also included testing concrete and paint samples and recommending project improvements to the overall paint systems. Accordingly, the Court concludes that no reasonable juror could find that these duties are the kind associated with an employee who performs office or non-manual work required under the highly compensated employee exemption. Because Zubair's employment did not satisfy the duties test under either the Learned Professional or the highly compensated employee exemptions, Zubair is entitled to judgment as a matter of law as to his FLSA claim.

C.    NYSLL OVERTIME CLAIM

New York law, like the FLSA, requires that employers pay one and one-half times an employee's regular rate for work performed in excess of forty hours a week. See N.Y.

15

Comp. Codes R. & Regs. tit. 12, § 142-2.2. Since NYSLL "applies the same exemptions as the FLSA," the Court's analysis under the FLSA is equally applicable to Zubair's NYSLL claim. Ramos v. Baldor Speciality Foods, Inc., No. 10 Civ. 6271, 2011 WL 2565330, at *5 n.3 (S.D.N.Y. June 16, 2011). Indeed, NYSLL differs from the FLSA in only one respect -- to qualify for overtime exemption, an employer need not satisfy a salary test, only a duties test. See Davis v. Lenox Hill Hosp., No. 03 Civ. 3746, 2004 WL 1926087, at *5 (S.D.N.Y. Aug. 31, 2004). Since, as discussed above, Zubair's employment did not meet the duties test of the Learned Professional exemption, the Court grants summary judgment in favor of Zubair as to his NYSLL claim.

D.   LIQUIDATED DAMAGES

An employer who violates the FLSA's minimum wage and overtime requirements is liable for any unpaid minimum wages or overtime compensation "and an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). The Court may, in its discretion, reduce or deny liquidated damages "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of

16

the [FLSA]." 29 U.S.C. § 260. Under New York law, Zubair is also entitled to liquidated damages unless Defendants prove "a good faith basis for believing that its underpayment of wages was in compliance with the law." N.Y. Lab. Law § 198(1-a).

Based upon the current record, the Court cannot determine, as a matter of law, whether the Defendants acted in good faith and with reasonable grounds for believing that their conduct did not violate the FLSA or NYSLL. Without the opportunity to hear testimony describing with particularity Defendants' efforts to comply with the overtime requirements, the Court cannot determine whether Defendants acted with good faith reasonableness sufficient to preclude an award of liquidated damages. Consequently, on the record now before the Court, neither party is entitled to judgment as a matter of law as to liquidated damages.

E.    NYSLL SPREAD OF HOURS CLAIM

Zubair also seeks compensation pursuant to the "spread of hours" provision in the New York Department of Labor ("DOL") regulations, which would require Defendants to pay him an additional hour's pay at the "basic minimum hourly wage rate" for any day that he worked more than ten hours. N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4 ("§ 142-

17

2.4"). In response, Defendants maintain that the regulation does not apply to employees, like Zubair, who are paid above the minimum wage requirements. There is a split of authority in this District as to whether the regulation applies only to minimum wage workers or to all workers. See, e.g., Espinosa v. Delgado Travel Agency, No. 05 Civ. 6917, 2007 WL 656271, at *2 (S.D.N.Y. Mar. 2, 2007) ("By its plain language, section 142-2.4(a) only provides supplemental wages to workers who are paid the minimum wage required under New York Law. It does not ensure additional compensation to employees whose wages sufficiently exceed that floor."); Chan v. Triple 8 Palace, Inc., No. 03 Civ. 6048, 2006 WL 851749, at *21 (S.D.N.Y. Mar. 30, 2006) ("The plain text of § 142.4 ensures an additional wage only 'in addition to the minimum wage' required under New York law. It is therefore to be expected that the provision will not affect workers whose total weekly compensation is already sufficiently above the minimum rate." (emphasis in original)). But see Doo Nam Yang v. ACBL Corp., No. 04 Civ. 8987, 2005 WL 3312000, at *7 (S.D.N.Y. Dec. 5, 2005) (finding that § 142-2.4 was applicable to all employees regardless of whether they made more than minimum wage).

On April 12, 2006, the DOL issued two advisory opinion letters ("Opinion Letters") reaffirming its position that

18

employers are not required to pay employees additional spread of hours compensation if they make more than minimum wage. (See Definition of "Spread of Hours" Opinion Letter, File No. RO-06-0027 (Dep't of Labor Apr. 12, 2006); Definition of "Spread of Hours" Opinion Letter, File No. RO-06-0029 (Dep't of Labor Apr. 12, 2006).) In a recent decision, Sosnowy v. A. Perri Farms, Inc., the United States District Court for the Eastern District of New York noted that a large number of cases since Yang have disagreed with that court's decision not to grant deference to the Opinion Letters and its holding that the spread of hours regulation is applicable to all workers regardless of whether they are paid minimum wage. See 764 F. Supp. 2d 457, 473-74 (E.D.N.Y. 2011). Guided by the reasoning in Sosnowy and those cases in accord, as well as the recommendations provided by the DOL, the Court finds that the explicit reference to "minimum wage" in § 142-2.4 indicates that such a provision is properly limited to those employees who receive only the minimum compensation required by law. Accordingly, because neither party disputes that Zubair received more than the minimum wage while employed by EnTech Defendants are entitled to judgment as a matter of law as to Zubair's spread of hours claim.

F.   BREACH OF CONTRACT CLAIM

Zubair also brings a breach of contract claim for Defendants' failure to pay him for (1) accrued vacation time for the period he was employed by Defendants; (2) an agreed upon wage rate for the Nassau Expressway Project for the period November 2008 through December 2008; and (3) lodging and travel expenses for the period May 2008 through December 2008.   The elements of a breach of contract claim under New York law are: "(1) the existence of a contract; (2) performance by the party seeking recovery; (3) non-performance by the other party; and (4) damages attributable to the breach."   Wharton v. Duke Realty, LLP, 467 F. Supp. 2d 381, 393 (S.D.N.Y. 2006) (citing Marks v. New York Univ., 61 F. Supp. 2d 81, 88 (S.D.N.Y. 1999)).

Defendants assert that Zubair fails to identify any employment agreement that existed between the parties that could constitute a contract.   In response, Zubair relies on the Offer Letter where Defendants indicate that Zubair's proposed vacation and sick leave amounted to three weeks per year as evidence of a contract.   (See Zubair April 14 Letter, Ex. 8.)   In addition, in her deposition testimony, Bayat referred to a "special agreement" for the period of time that Zubair worked on the Bridge/Deck project.   (Id., Ex. 1, Bayat Dep., 105:8-22.)   With regard to compensation

20

owed for his work on the Nassau Expressway Project, Zubair claims Defendants unilaterally reduced the agreed upon rate of pay of $49 per hour to $46 for that project after NYSDOT failed to approve the higher amount.   It is unclear from the record, however, whether Defendants were obligated to continue to pay Zubair the $49 hourly rate despite NYSDOT's disapproval.   Furthermore, with regard to Zubair's claim for travel expenses, there is conflicting evidence as to why Zubair was not compensated for time he spent interviewing for contract jobs on behalf of EnTech. Because a genuine issue of material fact exists as to whether (1) a contract existed between the parties, (2) a breach of such contract occurred; and (3) there are damages attributable to such breach, summary judgment must be denied as to both parties.

G.   <u>CONCLUSION</u>

In sum, the Court grants judgment as a matter of law in favor of Zubair with respect to both his FLSA and NYSLL overtime claims.   Judgment as a matter of law is granted in favor of Defendants with respect to Zubair's NYSLL spread of hours claim.   The Court finds that there exists a genuine issue of material fact that precludes judgment as a matter of law with respect to Zubair's claims for liquidated damages and breach of contract.

21

## IV.   ORDER

For the reasons stated above, it is hereby

ORDERED that the motion of Ahmed Zubair ("Zubair") for summary judgment deemed contained in his letter-brief dated March 21, 2011 (Docket No. 25) is GRANTED in part and DENIED in part; and it is further

ORDERED that the motion of defendants EnTech Engineering P.C. and Soudabey Bayat deemed contained in their letter-brief dated March 21, 2011 (Docket Nos. 24) is GRANTED in part and DENIED in part; and it is further

ORDERED that the parties are directed to appear at a conference scheduled for September 9, 2011 at 11:15 a.m. prepared to discuss trial on Zubair's remaining liquidated damages and breach of contract claims.


**SO ORDERED.**

Dated:    New York, New York
          17 August 2011

                                    VICTOR MARRERO
                                       U.S.D.J.

22